# UNITED STATES DISTRICT COURT
### for the
### Northern District of New York

*FILED JUL 26 2019 AT ___ O'CLOCK John M. Domurad, Clerk - Albany*

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>STEVEN MCGILL<br><br>Defendant | )<br>)<br>) Case No. 1:19-MJ-469 (CFH)<br>)<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date of January 28, 2019 in the county of Rensselaer in the Northern District of New York the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of Ammunition by a Prohibited Person (felon) |

This criminal complaint is based on these facts:
See Attached Affidavit

☒ Continued on the attached sheet.

_____
*Complainant's signature*
Matthew Fontaine, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: July 26, 2019

_____
*Judge's signature*

City and State: Albany, New York

Hon. Christian F. Hummel, U.S. Magistrate Judge
*Printed name and title*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Matthew G. Fontaine, Special Agent of the Federal Bureau of Investigation, being duly sworn, depose and state as follows:

## INTRODUCTION

1. This affidavit is made in support of a criminal complaint charging STEVEN MCGILL with violating 18 U.S.C. § 922(g)(1) (prohibited person (felon) in possession of ammunition).

2. I am a Special Agent of the Federal Bureau of Investigation (FBI), an agency of the Department of Justice. I am empowered to investigate and make arrests for offenses of Titles 18 and 21 of the United States Code. I have been employed as a Special Agent for the FBI since 2009. I am currently assigned to the FBI Albany Field Office. From June 2015 to December 2016, I served as a Supervisory Special Agent at FBI Headquarters in Washington, D.C. Prior to my employment with the FBI, I was employed as an Assistant District Attorney for the Berkshire District Attorney in Pittsfield, Massachusetts from 2005 to 2009.

3. As a Special Agent, I have been trained in various aspects of law enforcement, including criminal and national security investigations. I have participated in the investigation and arrest of individuals for violations of Title 18 and Title 21 of the United States Code. I have taken leadership roles in investigations leading to numerous convictions for violations of Title 18 and Title 21 of the United States Code. I have participated in the execution of orders authorizing the interception of wire and electronic communications the subjects of which were possession of, sale of, and conspiracy to distribute controlled substances. I have conducted many hours of physical surveillance of subjects engaged in the distribution and sale of controlled substances. I

1

have interviewed confidential informants, whose veracity has been verified through independent investigation and whose assistance has resulted in arrests, convictions, controlled purchases and seizures of crack cocaine, cocaine, heroin, and other evidence. I have participated in the planning and execution of controlled purchases of illegal drugs, firearms and other evidence. I have conducted searches for and seized controlled substances, proceeds of drug distribution, drug paraphernalia, firearms, ammunition, and firearms accessories.

4. The facts in this affidavit come from my personal observations and investigation, my training and experience, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of supporting a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that MCGILL has committed a violation of 18 U.S.C. § 922(g)(1) (prohibited person (felon) in possession of ammunition).

## PROBABLE CAUSE

5. On January 25, 2019, United States Magistrate Judge Christian F. Hummel issued a search warrant authorizing law enforcement to search a residence in Troy, New York ("Subject Residence") for illegally possessed firearms and ammunition. On January 28, 2019, law enforcement, including your Affiant, searched the Subject Residence and located and seized 14 rounds of ammunition in the garage attached to the residence. The ammunition was in a small plastic bag and consisted of one Winchester .40 caliber S&W ball round and 13 Winchester 9mm Luger hollow point rounds, all of which were manufactured outside of New York State. As set forth more fully below, there is probable cause to believe that MCGILL, who lived at the Subject Residence, illegally possessed the ammunition.

6. Prior to the execution of the search warrant, on January 2 and 9, 2019, the FBI, including your Affiant, utilizing a confidential source ("CS") conducted controlled purchases of firearms in Troy, New York from "Seller."

7. On January 2, 2019, law enforcement met with CS at a pre-determined location and searched CS and CS's vehicle. Both were negative for contraband. Investigators provided CS with money to purchase one firearm from Seller. CS, under law enforcement surveillance, then travelled to meet with Seller near 4th Street and Hanover Street in Troy, NY. Surveillance recordings show that Seller arrived at the meeting location as a passenger of a Chevrolet Trailblazer, bearing license plate number NY JET4666 (hereinafter "Trailblazer"). Seller exited the Trailblazer and walked to CS's vehicle. Seller entered CS's car and video and audio recordings captured the meeting. During the meeting, Seller provided a firearm to CS in exchange for cash. Seller then exited CS's car and returned to the Trailblazer. The driver of the Trailblazer remained in the vehicle and was not observed during the controlled purchase. CS, under law enforcement surveillance, then returned to a pre-determined location and met with law enforcement. Law enforcement retrieved the firearm CS purchased from Seller from CS's vehicle. CS and CS's vehicle were searched and were negative for any additional contraband. The firearm was a loaded, black Hi-Point 9mm handgun with an obliterated serial number. The gun was loaded with eight (8) rounds of Winchester 9mm Luger hollow point rounds.

8. On January 9, 2019, the FBI conducted another controlled firearms purchase from Seller using CS. Law enforcement met with CS at a pre-determined location and searched CS and CS's vehicle for contraband, both were negative. Law enforcement provided CS with money to purchase two firearms from Seller. CS, under law enforcement surveillance, travelled to the same meeting location as on January 2, 2019. Surveillance again showed Seller arrive at

3

the meeting location as a passenger of the same Trailblazer. Seller exited the Trailblazer and entered CS's car. Video and audio recording devices captured the meeting. Seller provided two loaded firearms to CS in exchange for money. Seller exited CS's vehicle and reentered the Trailblazer. The driver of the Trailblazer remained in the vehicle and was not observed during the controlled purchase. CS, under law enforcement surveillance, drove to a pre-determined location to meet with law enforcement. Two firearms, several rounds of ammunition and packaging materials were recovered from CS. One of the firearms recovered was a Taurus PT24/7CA .40 caliber handgun. The gun was loaded with eight Winchester .40 caliber S&W ball rounds and one Winchester 9mm Luger hollow point round. As set forth in paragraph 5 above, this combination of ammunition matches the combination of ammunition found in the Subject Residence on January 28, 2019. CS and CS's vehicle were searched for contraband with negative results. Following the controlled purchase, Seller sent a text message to CS stating "he got more food for it to[o]." Based on my training and experience with this investigation, I understand that to mean the supplier had more ammunition for the firearm.

9. Immediately following the controlled purchase on January 9, 2019, law enforcement conducted surveillance of the Trailblazer. Surveillance agents observed the Trailblazer drive away from the meeting location. Law enforcement then lost sight of the vehicle for a short time. After relocating the vehicle, surveillance agents observed the Trailblazer enter the parking lot of a location believed, based on this investigation, to be Seller's place of employment and then proceed to a gas station / convenience store. Once parked at the convenience store, agents observed the driver of the Trailblazer exit the vehicle and enter the convenience store. Law enforcement obtained surveillance footage from the convenience store from January 9, 2019. The surveillance footage showed a Trailblazer arrive and park at the

4

convenience store. An individual exited the vehicle and entered the convenience store. Surveillance footage from within the convenience store showed the individual enter the store, and based on that footage, your Affiant recognized the individual as MCGILL. I have met with MCGILL in person as part of this investigation and am familiar with his appearance and physical features. MCGILL entered the store wearing a black winter coat with a white Nike logo on the left breast and exited shortly thereafter.

10. Cell tower data collected by law enforcement for the phone subscribed to in the name of MCGILL shows that the phone was in the area of the controlled purchases on January 2 and 9, 2019.

11. On January 9, 2019, records indicated the Subject Residence was the parole residence of record for MCGILL. On the same date at approximately 7:30 a.m., an investigator observed the Trailblazer parked directly in front of the Subject Residence. On January 11, 2019, an investigator captured video footage of a person I believe to be MCGILL exiting the Subject Residence, entering the Trailblazer and driving east. MCGILL was present at the Subject Residence when the search warrant was executed on January 28, 2019.

12. During the execution of the search warrant at the Subject Residence on January 28, 2019, law enforcement also located a black winter coat with a white Nike logo on the left breast in the same room where MCGILL was sleeping when investigators arrived. MCGILL was advised of and waived his *Miranda* rights during the execution of the search warrant. MCGILL denied knowledge or possession of firearms or ammunition. MCGILL identified the Nike winter coat as his coat and identified himself in a still photograph taken from the January 9 convenience store surveillance video referenced in paragraph 9 above. MCGILL's ex-wife, who lived with

him, was also present at the time of the search. She denied owning the ammunition or knowing that it was there.  She also denied knowing whether the ammunition was MCGILL's.

13.     MCGILL is a convicted felon. On May 8, 2007, MCGILL was convicted in Albany County Court of Criminal Possession Controlled Substance-1st: Narcotic Drug 8 Ozs or More, a felony, and sentenced to 13 years in prison. MCGILL was released from prison on September 26, 2018 and placed on parole.  On October 30, 2002, MCGILL was convicted in Albany County Court of Attempted Criminal Possession Controlled Substance-5th: Cocaine 500 Milligrams, a felony, and sentenced to 18 months to three years in prison. On June 20, 1990, McGill was convicted in Rockland County Court of Criminal Possession Controlled Substance-2nd Degree, a felony, and was sentenced to 5 years in prison.

## CONCLUSION

14.     Based upon the above information, I believe there is probable cause to establish that STEVEN MCGILL has violated 18 U.S.C. § 922(g)(1), which makes it unlawful for any person who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year to possess in and affecting commerce, any ammunition.

Respectfully submitted,

Matthew G. Fontaine
Special Agent
Federal Bureau of Investigations

Subscribed and sworn to before me on July 26, 2019:

Honorable Christian F. Hummel
UNITED STATES MAGISTRATE JUDGE

6